■ Petition for review granted in part and denied in part and cross-application for enforcement granted in part and denied in part by published opinion. Judge NIEMEYER wrote the opinion, in which *294 Judge HERLONG joined. Judge LUTTIG wrote an opinion concurring in part and dissenting in part.
OPINION
NIEMEYER, Circuit Judge.
After The Earthgrains Company, Inc., a manufacturer of baked goods, acquired CooperSmith, Inc.; another manufacturer of baked goods, and consolidated the facilities of the two companies in several cities, the National Labor Relations Board (the “Board” or the “NLRB”)' accreted Coo-perSmith’s employees, who had not been represented by a union, into Earthgrains’ existing bargaining units without giving the CooperSmith employees a chance to vote on whether they wished to be so represented. When Earthgrains refused to recognize the union at four of its Mississippi facilities — -Meridian, Laurel, Hatties-burg, and Columbus — the Board found that Earthgrains committed unfair labor practices in violation of the National Labor Relations Act (“NLRA”) and ordered Ear-thgrains to recognize the union at the four sites.
On Earthgrains’ petition for review and the NLRB’s cross-application for enforcement of its order, we conclude that at three-of the sites, the Board failed to apply its own precedents for accreting employees, and accordingly, with respect to those sites, we grant Earthgrains’ petition for review and deny the Board’s cross-application for enforcement. At the remaining site, we deny Earth-grains’ petition for review and grant the Board’s application for enforcement. Finally, with respect to a Board finding that Thomas Neal, an Earthgrains’.employee, was constructively discharged for exercising statutory rights, we grant the Board’s application to enforce as modified herein.
I .
The Earthgrains Company, Inc. (now Sara Lee Bakery Group, Inc.) (“Ear-thgrains”) manufacturers and distributes baked goods throughout the Ünited States through distribution facilities, some of which also contain bakery stores. At many of these facilities, Earthgrains’ employees have elected to be' represented by the Bakery, Confectionary, and Tobacco Workers International Union (the “Union”). Before Earthgrains acquired Coo-perSmith, Inc., it had 19 distribution facilities in Mississippi, which were divided into three bargaining units, each of which had a collective bargaining agreement with Ear-thgrains.
On January 16, 1998, Earthgrains acquired CooperSmith, a competing distributor of baked goods, which also operated several facilities in Mississippi. None of CooperSmith’s employees were represented by a union.
In cities where Earthgrains ended up with multiple facilities as a result of its acquisition of CooperSmith, Earthgrains consolidated the CooperSmith and Ear-thgrains facilities, closing either a former Earth-grains facility or a former CooperS-mith facility and naming the new facility according to which company had the more dominant market share'in the particular city. Earthgrains then associated union status with the name of the facility, continuing its recognition of the Union at facilities named Earthgrains and refusing to recognize the Union at facilities named CooperSmith.
In Meridian, Laurel, and Hattiesburg, Mississippi, Earthgrains closed its own former facilities and continued distribution using the former CooperSmith facilities, transferring former Earthgrains employees to the new CooperSmith facilities to work there with the former CooperSmith *295 employees.[1] After the consolidation, 11 of the 13 employees at Meridian were former CooperSmith employees; 8 of 9 employees at Laurel were former CooperSmith employees; and 10 of 15 employees at Hattiesburg were former CooperSmith employees. At Columbus, Earthgrains closed the CooperSmith facility and transferred the former CooperSmith employees to the Earthgrains facility. The consolidated facility had 4 former Earthgrains employees and 3 former CooperSmith employees. But because the Columbus market was dominated by the CooperSmith brand, Earthgrains renamed the former Ear-thgrains facility CooperSmith.
After Earthgrains declined to recognize the Union at the four facilities operating under the CooperSmith name, the NLRB’s General Counsel charged Earthgrains with unfair labor practices in failing to negotiate with the Union, in violation of §§ 8(a)(1)-and 8(a)(5) of the NLRA. In a split decision, the Board concluded that Earthgrains had violated the NLRA by. refusing to negotiate with the Union and by making unilateral changes at these four facilities. In addition, the Board found that Earthgrains had constructively discharged Thomas Neal, an employee at Columbus, for exercising his rights under the NLRA, in violation of § 8(a)(3) of the Act.
In ruling that the newly-acquired Coo-perSmith facilities should have been included in preexisting Earthgrains bargaining units, the Board concluded that the acquisition “did not affect the appropriateness of the bargaining units or [Ear-thgrains’] obligation to recognize the Union as representative of those units, as enlarged by the accretion of CooperSmith employees.” Chairman Peter Hurtgen dissented, concluding that the majority had failed to identify the issue properly. He stated that “the real issue is whether the newly acquired Cooper Smith employees are appropriately a part of the two respective units The issue here is whether the new employees can be added to the unit without a vote.” Addressing that issue, Chairman Hurtgen concluded that “accretion requires a finding of ‘overwhelming community of interest,’ ” a finding which was not supported by the record.
From the Board’s order, Earthgrains filed this petition for’ review, and the NLRB filed a cross-application for enforcement of its order.
II
The principal question on appeal is whether the Board applied its long-standing principles for defining bargaining units and for accreting employees' to existing bargaining units when it held that Earth-grains had an obligation to recognize bargaining units “as enlarged by the accretion of CooperSmith employees.” In deciding such questions, the Board must apply its principles consistently. See, e.g., NLRB v. Lundy Packing Co., 68 F.3d 1577, 1583 (4th Cir.1995).
At the outset, we agree with Chairman Hurtgen that the particular issue presented is whether the Board properly accreted the Cooper Smith employees to Ear-thgrains’ preexisting bargaining units— not whether Earthgrains’ existing units remained “appropriate.”[2] Because Ear- *296 thgrains contends that it need not recognize union representation of the newly acquired CooperSmith employees, who had never been represented by a union or had the opportunity to vote for representation, the issue is whether accretion was justified and not whether the existing units remained appropriate. The transactional facts relating to this issue are not in dispute.
With respect to the CooperSmith employees at Meridian, Laurel,' and Hatties-burg, the formér CooperSmith facilities remained open, and the CooperSmith employees continued to work at those facilities. While Earthgrains transferred a few of its own former employees to each Coo-perSmith facility, the majority at each site remained former CooperSmith employees, and those employees had never elected to be represented by a union. With respect to the former CooperSmith employees at Columbus,, they were transferred to a former Earthgrains facility where Ear-thgrains employees also worked. At that site, Earth-grains’, employees, who were represented by the Union, remained in the majority. . .
In determining that the former Coo-perSmith employees at all four of these facilities should be accreted to two existing Earthgrains bargaining units, the Board stated simply: -
There is substantial record support for the [administrative law] judge’s finding that [Earthgrains’] consolidation of its existing operations with [CooperSmith] did not affect the appropriateness of the bargaining units or [Earthgrains’] obligation to recognize the Union as representative of those units, as enlarged by the accretion of CooperSmith employees. Specifically, the record shows that: [Earthgrains] continues to produce and distribute bakery products without substantial changes in operations; employees from the historically represented units comprise a majority in each overall expanded unit; no other labor organization represented the CooperSmith employees; and those employees share a community of interests with the previously represented employees in the consolidated operations.
(Emphasis added). The Board did not address whether a community of interests existed between the employees of each of these separate facilities and the bargaining unit or whether the employees at each separate facility had a separate group identity sufficient to be considered a separate bargaining unit.
On appeal, Earthgrains argues that the Board “disregarded the appropriate deci-sional line, made no effort to explain why it had disregarded [its] precedents], and applied a completely inconsistent analysis that was patently inapplicable.” It argues that the Board failed to take into account the fact that Earthgrains acquired new facilities in distinct geographical locations, thus overlooking its case law, which applies a presumption that a new facility has a separate' group identity sufficient to be considered a separate bargaining unit.
*297 The NLRB regulates in the broad policy context that “[ejmployee self-determination in the collective bargaining process is perhaps the [NLRA’s] most fundamental promise.” Baltimore Sun Co. v. NLRB, 257 F.3d 419, 426 (4th Cir.2001). Specifically, § 7 of the NLRA grants employees the right to choose equally between self organization through representatives “of their own choosing” and the right “to refrain” from any collective bargaining activity. 29 U.S.C. § 157; see also Melbet Jewelry Co., 180 N.L.R.B. 107, 109, 1969 WL 23025 (1969).
To protect the employees’ right of self-determination, the Board is given broad discretion to define appropriate collective bargaining units. See 29 U.S.C. § 159(b); Lundy Packing, 68 F.3d at 1579-80. Those units, in turn, vote on union representation, and, if the union wins, the union may bargain collectively with the employer to reach a collective bargaining agreement that will govern the unit for an agreed term. During the term of the collective bargaining agreement, new employees of the company where the bargaining unit exists are routinely accreted into the unit to be bound by the agreement. See, e.g., Auciello Iron Works, Inc. v. NLRB, 517 U.S. 781, 786, 116 S.Ct. 1754, 135 L.Ed.2d 64 (1996) (describing the union’s entitlement to a presumption of majority status during the term of a collective bargaining agreement). But that routine course of action assumes that the new employees have “little or no separate group identity and thus cannot be considered to be a separate appropriate unit.” Baltimore Sun, 257 F.3d at 427 (citation and internal quotation marks omitted).
In contrast, when an entire group of nonunion employees joins a union company, accretion is rare and is reserved only for “cases in which [the Board] could conclude with great certainty, based on the circumstances, that the employees’ rights of self-determination would not be thwarted.” Baltimore Sun, 257 F.3d at 427. Specifically, through its announced standard, the Board rejects accretion unless two prerequisites have been satisfied: (1) the Board must find that the new employees have “an insufficient group identity to function as a separate unit”; and (2) it must find an “overwhelming community of interest,” such that the accreted employees have “interests [that] are so closely aligned with those of the preexisting bargaining unit that the Board can safely assume that the accreted employees would opt into the unit if given the opportunity.” Baltimore Sun, 257 F.3d at 427 (citing Safeway Stores, 256 N.L.R.B. 918, 918, 1981 WL 20532 (1981)).
When a company acquires new employees through the acquisition of an entire facility, the Board has presumptively treated the employees at the new facility as a separate bargaining unit. See, e.g., ATS Acquisition Corp., 321 N.L.R.B. 712, 712, 1996 WL 395871 (1996); Gitano Group, Inc., 308 N.L.R.B. 1172, 1175, 1992 WL 281657 (1992). And the Board generally does not compel the employees .at the new facility to be included in a pre-existing bargaining unit “without allowing those employees the opportunity of expressing their preference in a secret election.” Archer Daniels Midland Co., 333 N.L.R.B. No. 81, 2001 WL 303760, at *6 (2001) (quoting Melbet Jewelry, 180 N.L.R.B. at 110); Kroger Co., 155 N.L.R.B. 546, 548-49, 1965 WL 15824 (1965) (requiring new elections when two plants “merge into an entirely new operation”); General Extrusion Co., 121 N.L.R.B. 1165, 1958 WL 13565 (1958) (refusing to apply the contract bar doctrine where “changes have occurred in the nature as distinguished from the size of the operations ... involving ... a.merger of two or more opera *298 tions"). But even if the Board fails to apply this presumption, it will bypass elections and acërete the employees at the separate facility into the existing bargaining unit onlywhen it is clear that a majority of the employees at the new facility acquired by the company wishes to join the existing bargaining unit-i.e., only where the Board "could conclude with great certainty . that the employees' rights of self-determination would not be thwarted." Baltimore Sun, 257 F.3d at 427.
At the three locations where Ear-thgrains acquired new facilities and where it continued with CooperSmith employees-Meridian, Laurel, and H~ttiesburg-the Board failed to apply its presumption that each new facility be regarded as a separate bargaining unit. See ATS Acquisition, 321 N.L.R.B. at 712; Gitano Group, 308 N.L.R.B. at 1175. For this reason alone, we decline to enforce the Board's order accreting the employees at those facilities.
But even without the presumption from ATS Acquisition and Gitano Group, the Board failed to apply its long-standing principles for accreting groups of new employees into existing bargaining units. It did not, and could not, conclude that the employees at each Cooper Smith facility had an “insufficient group identity to function as a separate unit,” Baltimore Sun, 257 F.3d at 427, and that the community of interest between those employees and the employees in the existing Earthgrains bargaining unit was “overwhelming,” Safeway Stores, 256 N.L.R.B. at 918. To reach such a conclusion, the Board would have had to find that the former CooperSmith employees, at each historically nonunion-ized facility in a location geographically distinct from employees in the Earthgrains bargaining unit, could not have a group identity sufficient to form a bargaining unit. See Arcadian Shores, Inc. v. NLRB, 580 F.2d 118, 120 (4th Cir.1978). Given its broad discretion to define bargaining units, the Board could not have overcome that barrier. And without satisfying itself that the employees at each separate facility could not have a group identity, the Board could not have accreted the CooperSmith employees to an existing bargaining unit.
Moreover, the Board could not have satisfied the second step of its Safewcty Stores accretion standard-that the CooperSmith employees had an "overwhelming" community of interest with the Earth-grains employees in the bargaining units. To decide that question, the Board traditionally applies a 12-factor test, considering:
(1) similarity in the scale and manner of determining the earnings; (2) similarity in employment benefits, hours of work, and other terms' and conditions of employment; (3) similarity in the kind of work performed; (4) similarity in the qualifications, skills, and training of the employees; (5) frequency of contact or interchange among the employees; (6) geographic proximity; (7) continuity or integration of production processes; (8) common supervision and determination of labor-relations policy; (9) relationship to the administrative organization of the employer; (10) history of collective bargaining; (11) desires of the affected employees; (12) extent of union organization.
Lundy Packing, 68 F.3d at 1580. The Board did not conduct this analysis. And if it had conducted the analysis, even the limited record in this case demonstrates the Board could not have overcome this second step.
Notwithstanding the similarity between CooperSmith’s and Earth-grains’ operations, the CooperSmith employees worked at separate facilities in geographical locations distinct from the ar *299 eas in which employees in Earthgrains' bargaining units worked. In addition, CooperSmith employees worked under conditions that developed over years of working for CooperSmith before it was acquired by Earthgrains. And the employees at the CooperSmith facilities had never been unionized or subject to a. collective bargaining agreement. Finally, even after a few Earthgrains employees were transferred to each of the former CooperSmith facilities, the CooperSmith employees continued to outnumber the Earthgrains employees by substantial margins-li to 2 at Meridian; 8 to 1 at Laurel; and 10 to 5 at Hattiesburg. These data alone suggest that the former CooperSmith employees might sue-cessfully assert their historicail~ separate interests through a vote, if given the chance. Certainly, the Board could hot "safely assume that the accreted [Coo-perSmith] employees would opt into [the relevant Earthgrains] unit if given the opportunity." Baltimore Sun, 257 F.3d at 427. As we observed in Baltimore Sun:
Because the accretion doctrine is in considerable tension with the statute’s guarantee of employee self-determination, the Board has historically favored employee elections, reserving accretion orders for those rare cases in which it could conclude with great certainty, based on the circumstances, that the employees’ rights of self-determination would not be thwarted.

Id.

Accordingly, we conclude that the Board, in accreting the Cooper Smith employees at the Meridian, Laurel, and Hat-tiesburg facilities into two Earthgrains bargaining units, failed to follow its own standards for doing so. Therefore, we decline to enforce the Board’s order directing Earthgrains to recognize that those employees are represented by the Union.
At the Columbus 'facility, however, the circumstances are sufficiently different to justify a different result. Even after its acquisition of CooperSmith, Earthgrains continued the operation of its own former facility in Columbus, even though it changed the name of that facility to Coo-perSmith, and it transferred the former CooperSmith employees to the former Earthgrains facility. Also, after the Cooper Smith employees were transferred to the former Earthgrains facility, the Ear-thgrains employees continued to outnumber the CooperSmith employees, four to three. Because the former CooperSmith employees were moved into the Ear-thgrains facility and worked there under the conditions historically established through a collective bargaining agreement, the presumption of ATS Acquisition and Gitano Group would not apply. Moreover, when we apply the traditional standards for -accreting employees, the outcome becomes a much closer question, and we cannot conclude that the Board violated its own standards. Accordingly, we will grant the Board’s cross-application to enforce its order insofar as it applies to the Columbus facility.[3]
Ill
Earthgrains also challenges the Board’s finding that Earthgrains violated *300 § 8(a)(3) of the NLRA by “constructively discharging” Thomas Neal for exercising his statutory rights.
Neal was hired in November 1996 as a route salesman at Earth-grains’ Columbus facility. A few months later, in February 1997, his route-was eliminated, and Neal was laid off. Shortly thereafter, however, Neal was recalled as a depot loader. He was told upon his return that he cquld return to his route salesman position if a route came open. , -
Following Earthgrains' acquisition of CooperSmith in January 1998, sales routes were restructured and reassigned. When Neal was not given one of the routes, he filed a grievance through the Union, which was rejected. Subsequently, when a route salesman was fired and another route came open, Neal requested that route. He was told, however, that he would get the rOute only if Willie Williams, another employee, turned it down. When Neal asked why Williams had priority for the position, Neal claims that he was told by David Willis, his supervisor, "If I had kept my nose-if I'd keep my nose clean and leave the union mess alone, I could get a route." Neal was left with the belief that he "would have got a route" but for his union participation.
Neal nevertheless continued to work as a depot loader for approximately another month and a half. He then resigned, giving the following explanation for his resignation:
I had heard that they were going to try to do away with my job regardless, because they was going to try to work where there wouldn’t be a depot loader, and I figured I better get out of there before they laid me off, so I turned in a week’s notice the first part of June and worked it out.
Neal’s fear of losing his job was based on an informal conversation with a Meridian supervisor about rumors from which Neal drew inferences. But Neal was never told by the company, or even formally by anyone, that his job would be eliminated. Nor was he told that, in the event of the elimination of his job, he would lose his job rather than being ’ transferred to a new position. And as it turned out, the rumors on - which Neal acted were inaccurate. Neal’s depot loader position was never eliminated.
We conclude that substantial evidence supports the Board’s finding that Ear-thgrains, by refusing to promote Neal to route . sales representative, violated § 8(a)(3) of the NLRA. Neal’s testimony, which was not rebutted, supports the Board’s conclusion that Neal was not given the route salesman position because of his union participation. Accordingly, we affirm the Board’s finding that an illegal animus contributed to Earthgrains’ decision to deny Neal a position as route sales representative.
But on the Board’s finding that Earthgrains violated § 8(a)(3) by “constructively discharging” Neal from his job as depot loader, we conclude that the Board had no substantial evidence to support its finding.
To. prove constructive discharge, the General Counsel would have to establish “that the employer [intentionally] made the employee’s working conditions intolerable” and “that the employer did so because of the employee’s union activities.” NLRB v. Grand Canyon Mining Co., 116 F.3d 1039, 1049 (4th Cir.1997). The Board has held that constructive discharge may also be proved with evidence that the employee faced a “-Hobson’s Choice” between continued employment and “abandoning] his or her [statutory] rights.” Intercon I (Zercom), 333 N.L.R.B. No. 30, 2001 WL 408748 *1 (2001).
*301 In this case the Board found that Neal “quit after being confronted with a [Hobson’s] choice between resignation or continued employment conditioned on relinquishment of statutory rights.” The evidence in the record, however, does not support this conclusion.[4] Despite the suggestion to Neal that he would be promoted to route salesman only if he “would leave the union alone,” there was never any suggestion that Neal’s continued employment as a depot loader was conditioned on relinquishment of his statutory rights. No one from Earthgrains management ever threatened Neal with discharge or intimated that Neal’s .job as a depot loader was in danger because of his union activities. To the contrary, Neal’s own testimony supports only the conclusion that he resigned because of rumors that his job would be eliminated due to some further restructuring. He has made no suggestion that the rumors about the elimination of his job were in any way directed at him or, indeed, that the rumors were even circulated by management. In short, there is simply no basis for finding that Neal faced a Hob-son’s Choice of quitting his depot loader job or relinquishing his statutory rights.
Thus, while we refuse to enforce any remedy based on a finding that Neal was constructively discharged, we conclude that Neal nevertheless is entitled to a remedy by reason of Earthgrains’ refusal to promote him to the route salesman position. Accordingly, we will grant the Board’s application to enforce its order insofar as it requires Earthgrains to offer Neal the position of route salesman or a “substantially equivalent position” if that position no longer exists. Any back-pay remedy would accordingly pay Neal the difference between what he would have made as a route sales representative and what he actually made as a depot loader and at whatever jobs he held after his resignation, covering a period commencing with the date he was first denied a route and ending with the date of offer of reinstatement. Finally, the “Notice to Employees” provided for in the Board’s order would have to be modified to read: “We will offer immediate and full reinstatement to Thomas Neal to a route sales representative job, and we will make Neal whole for alllosses because of our unlawful refusal to grant[1] his request for a route sales representative job.”
IV
In sum, we grant Earthgrains’ petition for review insofar as it relates to the Board’s accretion of former CooperSmith employees at Meridian, Laurel, and Hat-tiesburg. We also grant, its petition insofar as it challenges the Board’s finding that Earthgrains constructively discharged Neal. In all other respects, we deny Ear-thgrains’ petition. Correspondingly, we grant the Board’s cross-application for enforcement of its order as it applies at Columbus, and we grant its cross-application for enforcement of its order with respect to Earthgrains’s denial of Neal’s promotion to a route sales representative. In all other respects, we deny enforcement of the Board’s order.

IT IS SO ORDERED.

. At Meridian, Earthgrains transferred only a portion of its employees to the new CooperS-mith facility, retaining bakery workers at the former Earthgrains facility.

. Our colleague in dissent likewise focuses on the appropriateness of Earthgrains' existing bargaining units, articulating the issue of whether former Earthgrains’ employees “must be treated as .separate bargaining units.” (Emphasis added). Earthgrains, *296 however, does not challenge the appropriateness of its existing bargaining units. Rather it raises the question of whether the Board could,- in its discretion, recognize that the CooperSmith employees, at their respective facilities, might be constituted as separate units. If they could be so constituted, Ear-thgrains contends that the-CooperSmith employees could not be accreted to the existing Earthgrains’ units and thereby be denied the right to an election. Chairman Hürtgen likewise recognized the actual issue raised by Earth-grains, noting, “the real issue is whether the newly acquired Cooper Smith employees are appropriately a part of the two [Ear-thgrains] units.” He restated this issue as “whether the new employees can be added to the unit without a vote.”

. We reject Earthgrains' ádditional argument for refusing to recognize the Union at Columbus. Earthgrains argues that because the local union was placed in trusteeship by reason of financial deficiencies and defalcations, it was unable to represent Earthgrains' employees adequately. But we can find nothing in the record to suggest that the interests of the employees were ever compromised. To the contrary, since September 1998, when the trusteeship began, the trustee has continued to meet and negotiate with Earthgrains to the extent that Earthgrains was willing to bargain. ■ .

. Because we conclude that the record evidence does not support a finding that Neal faced an unlawful "Hobson’s Choice,” we need not reach the issue, raised by Ear-thgrains, of whether the Board's "Hobson's Choice” precedent is consistent with the NLRA.

. The Meridian bargaining unit comprised sales employees in: Meridian (7), Columbus (5), Tupelo (4), Forest (5), Greenville (2), Kosciusko (5), Vicksburg (1), Philadelphia (5), Grenada (2), Jackson (12), Magee (2), and Yazoo City (1). The Gulfp.ort bargaining unit covered workers in: Laurel (4), Hattiesburg (6), Brookhaven (2),' Picayune (1), Lucedale (1), Gulfport (11), and Pascagoula (5). Finally, the Jackson bargaining unit covered a portion of the sales employees, in Jackson, who previously worked for Hardins Bakery. When Earthgrains acquired Hardins Bakery in 1986, the former Hardins Bakery workers continued working for Earthgrains under their extant collective bargaining agreement (now known as the "Jackson agreement”), which Earthgrains assumed, while Ear-thgrains’ other employees at the Jackson facility were covered by the "Meridian agreement.”